UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY WILLIAMS,<br><br>       Plaintiff,<br><br>  v.<br><br>S. STEGLINSKI, et. al.,<br><br>       Defendants. | Case No.: 1:12-cv-00786-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>[ECF No. 58] |

Plaintiff Gary Williams is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

## I.

## PROCEDURAL HISTORY

This action is proceeding on Plaintiff's claim of excessive force against Defendants Steglinski and Dyer.

On January 5, 2015, Defendants Steglinski and Dyer filed a motion for summary judgment. (ECF No. 58.)  Plaintiff filed an opposition on March 9, 2015, and Defendants filed a reply on March 16, 2015.  (ECF Nos. 62, 63, 64.)  Plaintiff filed a surreply on April 20, 2015, and Defendants filed a motion to strike Plaintiff's surreply on April 24, 2015.  (ECF Nos. 65, 66.)

///

///

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The Court determines *only*

whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## III.

## DISCUSSION

### A. Motion to Strike Plaintiff's Surreply

Parties do not have the right to file surreplies and motions are deemed submitted when the time to reply has expired. Local Rule 230(*l*). The Court generally views motions for leave to file a surreply with disfavor. Hill v. England, No. CVF05869 REC TAG, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (citing Fedrick v. Mercedes-Benz USA, LLC, 366 F.Supp.2d 1190, 1197 (N.D. Ga. 2005)). However, district courts have the discretion to either permit or preclude a surreply. See U.S. ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to permit "inequitable surreply"); JG v. Douglas County School Dist., 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file surreply where it did not consider new evidence in reply); Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond).

In this instance, Defendants did not raise new arguments in their reply brief, Plaintiff did not seek leave to file a surreply, and his arguments therein do not impact the Court's analysis. Accordingly, Defendants' motion to strike Plaintiff's surreply (ECF No. 65) is GRANTED.

### B. Allegations of Complaint

On May 24, 2010, at approximately 2:30 p.m., while Plaintiff was engaged in recreational activities on facility "A" at Kern Valley State Prison ("KVSP"), a fight broke out in the general area where Plaintiff was located.

At this time, S. Steglinski was working in the facility's observation tower closest to the area of the fight. S. Steglinski ordered everyone to get down on the ground in a prone position. After Plaintiff was in a prone position, Plaintiff observed Defendant Steglinski "maliciously fire the 40 mm less-than-lethal weapon in his possession into the general area wherein Plaintiff was proned-out,"

despite the actual disturbance haven taken place in a different area from which Plaintiff was located. The bullet struck Plaintiff in the neck, causing a "sharp and severe pain that shop up into [his] head, pushing to the brink of unconsciousness."

"While Plaintiff was [teetering] between consciousness and unconsciousness, and withering on the ground in pain from being struck by the bullet, Defendant R. Dyer approached Plaintiff and maliciously and sadistically discharged a canister of 'pepper spray' directly into [his] face, causing [him] to experience a severe burning pain in all areas of exposure."

### C. Undisputed Facts[1]

1. Plaintiff is an inmate of the California Department of Corrections and Rehabilitation, currently incarcerated at North Kern State Prison serving a criminal sentence.
2. Plaintiff was housed at Kern Valley State Prison (KVSP) from September 2007 until the end of 2010.
3. On May 24, 2010, Plaintiff was on the handball court on A Yard at KVSP playing handball at about 2:30 p.m.
4. There were several inmates on the yard at 2:30 p.m., and other inmates were playing handball with Plaintiff and on the court next to Plaintiff.
5. At approximately 2:30 p.m., two fights between inmates broke out on A yard.
6. One fight occurred on the handball courts and the other fight occurred by exercise bars by the yard urinals.[2]
7. The fight on the handball courts was close to where Plaintiff was playing handball and Plaintiff was not separated from the fighting inmates by any wall or fence.

---

[1] These facts are compiled from the parties' submissions where not in dispute.

[2] Plaintiff disputes Defendants' Statement of Fact Numbers 6, 7, 11-17, 24, 34, 49, 50, 60-62, 68-70, and argues Defendants responded to a fight by the lower yard gym doors, not to the fight on the handball courts where Plaintiff was located. (Pl's Opp'n, ECF No. 62, at 2-4.) Plaintiff cites to the staff reports of Defendants Steglinski and Dyer. (Id., Exs A and B.) However, Defendants' declarations state they responded to a fight on the handball courts, which are near the lower yard gym doors, which is consistent with the staff reports. (ECF No. 58-3, Dyer Decl. at 2:25-26; ECF No. 58-4, Steglinski Decl., at 2:23-24.) Further, Plaintiff has admitted that there were two fights on the yard, and that he was in close proximity to the fight on the handball courts. (Defs' Undisputed Fact. No. 5; Pl's Resp. at 1; Ex. A to Mark Decl., ECF No. 58-6, Depo. of Plaintiff at 31:22-32:6; 35:8-21.) As the evidence before the Court demonstrates there were two fights on the yard, Plaintiff's attempt to dispute the location of one of the fights occurring on the handball courts is without merit.

8. Officer Steglinski was an Observation Officer 2 on May 24, 2010 and armed with a Mini 14 rifle, a lethal weapon, and a 40 mm launcher, a non-lethal weapon.[3]

9. At about 2:32 p.m., in the course of his duties, Officer Steglinski heard a "code 1" on the KVSP institutional radio indicating a disturbance or fight was in progress on A Yard.[4]

10. There had been at least two other incidents on A yard on May 24, 2010, prior to the code 1 at 2:32 p.m.[5]

11. Officer Steglinski responded to the fight on the handball courts by going from the tower to the middle wall catwalk, which is located on the top of the wall of the handball courts that inmates on A yard use.

12. When Officer Steglinski responded to the middle wall catwalk, he observed four inmates that appeared to be fighting on the handball courts.

13. Officer Steglinski observed inmates below him very close to or against the wall and fighting and rolling around on the ground.

14. Officer Steglinski saw what appeared to be a single group of inmates fighting on the handball courts, and later these inmates were identified as inmates Harrison (D76439), Heath (G00699), Evans (J78025), and Williams (Plaintiff).

---

[3] Plaintiff attempts to dispute this fact by stating he cannot confirm all of the weapons at the disposal of Steglinski because staff is issued pepper spray and batons as well. Plaintiff fails to submit evidence to dispute this fact and such fact is thus undisputed. See Local Rule 260(b) (Plaintiff is required to include "with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied on in support" to create a dispute of fact).

[4] Plaintiff disputes this fact by arguing that "Number 5 of undisputed facts says 2:30 p.m. Now number 9 says 2:32 p.m." Plaintiff mischaracterizes Defendants' statement. Number 5 states, "At approximately 2:30 p.m." and Number 9 states, "At about 2:32 p.m. . . ." These statements of fact are consistent in that the incidents on the yard occurred at about 2:30 p.m. Indeed, Plaintiff admits facts 2-5, that the incident in question occurred "at about 2:30 p.m." (ECF No. 62.) In any event, there is no evidence that the mere two minute difference between 2:30 p.m. and 2:32 p.m. is material to any of his claims. Thus, Plaintiff has not created a dispute of material fact that would prevent summary judgment.

[5] Plaintiff attempts to dispute this fact by merely claiming "no where in the record can that be proved and it has nothing to do with this lawsuit." (ECF No. 62 at 2:10-12.) Beyond Plaintiff's statement that he disputes this fact, Plaintiff fails to point to any evidence to put this fact in dispute. Accordingly, no dispute of fact has been created. Local Rule 260(b).

15. While it was later determined that Plaintiff was not involved, Officer Steglinski does not recall any inmate on the handball court trying to separate himself from or distance himself from the fight.

16. Inmates who are not involved typically move away from a fight or disturbance to minimize the chances that they are mistakenly identified as being involved and to minimize the chances that they could be hurt when officers respond to stop a fight.

17. When Officer Steglinski responded to the fight on the handball courts, he gave orders for the inmates in the yard to get down or "prone out."

18. When an order is given for inmates to "get down" they are supposed to "prone out", which means the inmates are to lay flat on the ground on their stomachs, with their hands out in front of them and away from their body, and to remain still.

19. Plaintiff knew what was expected of him when given an order to get down by an officer.

20. After an order to get down is given, although an inmate may be on the ground, if the inmate is moving his body in any manner he is not considered in compliance with the officers' orders to get down.

21. Inmates will sometimes get down on the ground and prone out but then will get back up and attack other inmates or staff or begin or continue fighting.[6]

22. When an inmate on the ground is moving after an order to get down is given, that is perceived as a threat to other inmates and staff.

23. Once an order to get down is given, it need not be repeated multiple times or by other officers before force is used to subdue non-compliant inmates.

24. When inmates fighting on the handball courts failed to comply with Officer Steglinski's orders to get down, Officer Steglinski utilized his 40 mm launcher.

---

[6] Plaintiff disputes Fact Numbers 21-23, 25-26, 30, 47, 48, 63-67, based on his claim that he "has no knowledge to confirm or deny" these facts. (ECF No. 62 at 2:2-27; 3:4; 3:15; 4:15-16.) Notwithstanding that contentions set forth in verified pro se pleadings, motions, and/or oppositions constitute evidence where such information is based on personal knowledge of facts, Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004), Plaintiff cannot place a fact in dispute by merely stating "disputed" without sufficient evidence to support such claimed fact.

6

|   |   |
|---|---|
| 25. | The 40 mm launcher fires foam rubber rounds, which are solid and semi-circular. |
| 26. | Officer Steglinski determined that the 40 mm launcher was the force necessary to gain compliance with his orders. |
| 27. | Officer Steglinski did not see Plaintiff get hit with a round from a 40 mm launcher. |
| 28. | A round fired from a 40 mm launcher can miss its intended target because the target (intended inmate) is moving; the round was defective and did not deploy properly; or the round could ski off the ground and hit an inmate that was not the intended target.[7] |
| 29. | Plaintiff never spoke with Officer Steglinski about this incident on May 24, 2010. |
| 30. | Plaintiff did not see a projectile coming toward him when he claims he was shot. |
| 31. | Records from Delano Regional Medical Center show that Plaintiff received a contusion or bruise to his neck and that there were no broken bones. |
| 32. | A CT scan of Plaintiff's neck done after the incident was normal. |
| 33. | Plaintiff has no medical chronos or limitations on the type of work he can do because of the injury he received to his neck. |
| 34. | Multiple uses of force were required to subdue the fights on yard on May 24, 2010. |
| 35. | On May 24, 2010, Officer Dyer was assigned at KVSP Yard Officer 1. |
| 36. | Officer Dyer observed the fight in front of the exercise bars by the yard urinals, which involved inmates later identified as Napoleon (V10515), Davis (H28954), and Cooper (J29615). |
| 37. | Officer Dyer observed the fight in front of the exercise bars by the yard urinals, which involved inmates later identified as Napoleon (V10515), Davis (H28954), and Cooper (J29615). |
| 38. | Officer Dyer ordered the inmates fighting in front of the exercise bars to get down, but they did not comply with his order. |

---

[7] Plaintiff attempts to dispute this fact by this information was not listed in Steglinski's report regarding the incident. (ECF No. 62 at 3:5-6.) However, the fact this information was not in the staff report reported by Steglinski does not create a dispute of material fact because there is no showing that Steglinski was required to put this information in his staff report.

39. Officer Dyer utilized a CN tear gas grenade to separate the inmates fighting by the yard urinals.

40. Officer Dyer was then ordered by Sergeant Ortega to respond to the second fight that was occurring on the handball courts, which supposedly involved inmates later identified Heath (G00699), Harrison (D76439), Evans (J78025), Davis (T08271), and Williams (Plaintiff).[8]

41. Officer Dyer deployed a CN grenade toward the inmates fighting on the handball courts, but the CN did not have the desired effect, as the inmates ignored the effects of the CN.

42. Officer Dyer was then directed by Sergeant Ortega to provide coverage during the "cuff and cover" portion of the incident for inmates that were proned out in the handball court area.

43. During the "cuff and cover" portion of an incident, some yard officers handcuff the inmates after they are proned out. Other yard officers provide coverage for the yard officers performing the handcuffing.

44. During the "cuff and cover" portion of an incident, some yard officers handcuff the inmates after they are proned out. Other yard officers provide coverage for the yard officers performing the handcuffing.

45. When an officer is handcuffing an inmate, he has no equipment out, other than the handcuffs. In addition, the officer is focused on securing the inmate in handcuffs and not on the rest of the yard. Therefore, the safety of these officers is at greater risk than normal during the "cuff and cover" portion of an incident because they are in close

---

[8] Plaintiff disputes this fact by arguing that Sergeant Ortega's report does not reflect him giving orders to Officer Dyer while on the yard. However, whether this information appears in Ortega's staff report is immaterial and does not place this fact in dispute as there is no foundation or evidence that staff reports are required to contain every order (or any order) given by sergeants to correctional officers.

proximity to the inmates they are handcuffing as well as to other inmates who are nearby and not yet handcuffed.[9]

46. Officers assigned to provide cover during the "cuff and cover" portion of an incident observe the inmates to make sure they remain in the prone position and do not attempt to get up.  Any movement by an inmate from the prone position is seen as a risk to officers performing the handcuffing and to other inmates and staff on the yard.

47. Plaintiff was on the ground moving and not yet handcuffed before Officer Dyer deployed the pepper spray.

48. Officer Dyer deployed the pepper spray to Plaintiff's facial area as he trained to do.

49. Officer Dyer has no recollection of Plaintiff having trouble breathing, or being in distress during the "cuff and cover" portion of the incident when he deployed the pepper spray.

50. Officer Dyer did not have any knowledge or indication that Plaintiff had been hit by a round from a 40 mm launcher when he was deploying the pepper spray.

51. Pepper spray is deployed to the facial area as a means to immediately stop aggressive or non-compliant behavior.

52. The effects of pepper spray including irritation and tearing of the eyes, a burning sensation on the skin, and production of large amounts of mucus.

53. The effects of pepper spray are temporary, and generally subside with open air decontamination.

54. The use of pepper spray constitutes use of a minimal amount of force.

55. Officer Dyer determined that use of OC pepper spray was necessary to restore and maintain order on the yard during the cuff and cover portion of the incident.

56. Plaintiff was on the yard for at least 20 minutes following his being pepper sprayed.

---

[9] Plaintiff attempts to dispute this fact by stating "officers also cuff inmates while standing up."  Plaintiff's statement does not address the fact as stated and does not place it in dispute.

**D.     Excessive Force**

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citations omitted). For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted); Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation marks and citation omitted), and although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, Wilkins, 559 U.S. at 37-38 (citing Hudson, 503 U.S. at 9-10) (quotation marks omitted); Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

Factors that can be considered are "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted." Whitley v. Albers, 475 U.S. 312, 321 (1986). Although the extent of the injury is relevant, the inmate does not need to sustain serious injury. Hudson, 503 U.S. at 7; Wilkins, 559 U.S. at 37-38. The Eighth Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force. Hudson, 503 U.S. at 9-10.

**E.     Parties' Positions**

Defendants argue that their use of force was reasonable under the circumstances, and they are entitled to qualified immunity from suit.[10]

Plaintiff contends Defendants used force in a malicious and sadistic manner for the very purpose of causing him harm.

---

[10] Under Federal Rule of Civil Procedure 56(c)(2), a party may object to the admissibility of evidence presented. Defendants raise several objections to Plaintiff's complaint and evidence attached to his opposition; however, for the reasons explained below, the Court need not rule on such objections because the Court did not need to rely on the evidence objected to in ruling on the instant motion for summary judgment.

**F.     Findings**

   1.     Defendant Steglinski

The undisputed facts demonstrate that on May 24, 2010, two separate fights occurred on the exercise yards at KVSP. The fight on the handball courts was close to where Plaintiff was playing handball and there was no wall or fence separating Plaintiff from the fighting inmates. (Depo. of Plaintiff at 31:22-32:6; 35:8-21 (Decl. of Mark Ex. A); Decl. of S. Steglinski at ¶ 6.) Defendant Steglinski was an observation officer on May 24, 2010, and armed with a Mini 14 rifle, a lethal weapon, and a 40 mm launcher, a non-lethal weapon. (Decl. of S. Steglinski at ¶ 3.) At about 2:32 p.m., Steglinski heard a "code 1" on the KVSP institutional radio indicating a disturbance or fight in progress on the A yard. (Id. at ¶ 4.) Officer Steglinski responded to the fight on the handball courts by going from the tower to the middle wall catwalk, which is located at the top of the wall of the handball courts that inmates on A yard use. (Id. at ¶¶ 4-5; Depo of Plaintiff at 42:18-42:1.) When Steglinski responded to the middle wall catwalk, he observed four inmates, one of them Plaintiff, that appeared to be fighting. (Decl. of S. Steglinski at ¶ 6.) Steglinski observed the inmates fighting and rolling around on the ground. (Id.) Although it was later determined that Plaintiff was not actually involved in the fight, Steglinski does not recall any inmate on the handball court trying to separate himself from or distance himself from the fight. (Id.) When Steglinski responded to the fight, he gave orders for the inmates in the yard to get down or "prone out." (Id. at ¶ 8.) When an order is given for inmates to "get down," they are supposed to "prone out", which means the inmates are to lay flat on the ground on their stomachs, with their hands out in front of them and away from their body, and to remain still. (Depo. of Plaintiff at 20:13-21:5; 28:17-29:2; Decl. of R. Dyer at ¶ 4; Decl. of S. Steglinski at ¶ 10.)

When the inmates fighting on the handball courts failed to comply with Steglinski's orders to get down, Steglinski utilized his 40 mm launcher which fires foam rubber rounds. (Decl. of S. Steglinski at ¶¶ 3, 8, 9, 11.) Steglinski did not see Plaintiff get hit with a round from his 40 mm launcher, and Plaintiff did not see a projectile coming toward him before he was hit. (Id. at ¶ 9.) Records from Delano Regional Medical Center show that Plaintiff received a contusion or bruise to his neck and that there were no broken bones. (Depo. of Plaintiff at 67:20-68:7; 69:6-7:1; Ex. D.) A

11

CT scan of Plaintiff's neck done after the incident was normal. (Id.) Plaintiff had no relationship or conflict with Defendant Steglinski prior to the incident on May 24, 2010. (Depo. of Plaintiff at 89-90.)

Based on Defendant Steglinski's view point in the observation tower, he observed four inmates, one of which was Plaintiff, who appeared to be fighting. He ordered the inmates to stop which was ignored, and therefore force was necessary to quell the fight before it escalated. It was reasonable for Defendant Steglinski to shoot the 40 mm launcher toward Plaintiff who appeared to be part of the altercation, in a good faith effort to restore discipline. See, e.g., Brown v. McCullough, No. 2:11-cv-00093 JAM JFM PC, 2013 WL 3992186 (E.D. Cal. Aug. 1, 2013) (summary judgment granted in favor of Defendant officer who fired 40 mm launcher at a fight involving inmate-plaintiff because officer reasonably believed that the altercation posed a threat to the safety of staff and inmates.) Although Plaintiff suffered injury as a result of Defendant Steglinski's actions, a claim of excessive force under the Eighth Amendment focuses on the amount of force used, and the fact that Plaintiff suffered injury does not itself defeat summary judgment, in this instance. Hudson, 503 U.S. at 7; Wilkins v. Gaddy, 559 U.S. 34 (2010) ("core judicial inquiry," is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously or sadistically to cause harm."); Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (explaining that, in an Eighth Amendment claim for excessive use of force, a court focuses on "de minimis uses of force," not the nature or severity of injuries.) It is immaterial whether a third or fourth shot was fired,[11] or whether Plaintiff suffered substantial injury because the undisputed facts demonstrate that Defendant Steglinski did not act with malicious and sadistic intent to harm Plaintiff. Here, considering the need for force, the threat perceived by a reasonable official, and the relationship between the need for force and the force actually used, the undersigned finds that a reasonable juror would conclude "force was applied in a good-faith effort to maintain or restore discipline." Wilkins, 559 U.S. at 37; Whitley, 475 U.S. at 324

---

[11] Compare Defendant Steglinski's declaration, Ds' Mot. Attach. 4 ("I fired a total of three rounds from my 40 mm launcher…"), with officer Horton's crime/incident report, Opp'n Ex. C ("Correctional Officer Steglinski deployed four 40 MM direct impact rounds.") Because this is immaterial, the Court does not need to rule on Defendants' objection to admission and consideration of officer Horton's report.

1  (finding the intentional shooting of an inmate was part of a good faith effort to restore prison security
2  and did not violate the inmate's Eighth Amendment rights).

3        The fact that it was subsequently determined that Plaintiff was not involved in the altercation
4  does not establish a constitutional violation. It is inevitable that correctional officers must make
5  decisions "in haste, under pressure, and frequently without the luxury of a second chance." Hudson,
6  503 U.S. at 7 (quoting Whitley, 475 U.S. at 320). Indeed, in Whitley, an inmate who was not involved
7  in taking an officer hostage was shot by a shotgun, sustaining severe damage to his knee. Whitley,
8  475 U.S. at 323. There, the inmate was shot while he was moving up stairs after officers were
9  attempting to rescue the hostage. Id. The Supreme Court noted that although the inmate was not
10 involved in the altercation, at the time of the shooting, the officers had no way of knowing which
11 inmates had joined with the inmate who took the officer hostage. Id. The officers were not required
12 to attempt and did not have the means to attempt to inquire into each of the inmate's reasons for their
13 actions before the officers fired. Id. at 324. Defendant Steglinski's use of the 40 mm was appropriate
14 under the circumstances, and the fact that Plaintiff, who was in close proximity to the fight was hit,
15 does not establish a constitutional violation. Even if Plaintiff personally believes that Defendant
16 Steglinski shot directly at him without cause, Plaintiff's belief, alone, is insufficient to support a
17 finding of deliberate indifference in this instance because the circumstances surrounding the incident
18 do not support such inference.[12] See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
19 at 587 ("[t]he moving party "must do more than simply show that there is some metaphysical doubt as
20 to the material facts.") Based on the evidence submitted, Defendant Steglinski is entitled to summary
21 judgment.

22       2.    Defendant Dyer

23 On May 24, 2010, officer Dyer was assigned at KVSP Yard Officer 1 and was ordered to
24 respond to the fight occurring on the handball courts, which potentially involved Plaintiff and three
25 other inmates. (Depo. of R. Dyer at ¶ 3.) Officer Dyer deployed a CN grenade toward the inmates

---

[12] Any claim that Defendant Steglinski was negligent does not constitute cruel and unusual punishment because "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause. Whitley, 475 U.S. at 319-320.

13

fighting on the handball courts, but the CN did not have the desired effect, as the inmates ignored the effects of it. (Id. at ¶ 6.)  Officer Dyer was instructed to provide coverage during the "cuff and cover" portion of the incident for inmates that were proned out in the handball court area. (Id. at ¶ 7.) Officers assigned to provide cover during the "cuff and cover" portion of an incident observe the inmates to make sure they remain in the prone position and do not attempt to get up. (Id. at ¶¶ 4, 7.) Any movement by an inmate is seen as a risk to officers performing the handcuffing and to other inmates and staff on the yard. (Id. at ¶ 7.)  Plaintiff was on the ground moving and not yet handcuffed, when Dyer found it necessary to restore and maintain order by deploying the pepper spray to Plaintiff's facial area during the cuff and cover portion of the incident. (Id. at ¶¶ 8-10.)  Pepper spray is deployed to the facial area as a means to immediately stop aggressive or non-complaint behavior, as was done in this instance. (Id.)  Officer Dyer has no recollection of Plaintiff having trouble breathing, or being in distress during the "cuff and cover" portion of the incident when he deployed the pepper spray. (Id. at ¶ 10.)  Nor did officer Dyer have any knowledge or indication that Plaintiff had been hit by a round from a 40 mm launcher when he was deploying the pepper spray. (Id.)  Plaintiff had no relationship or conflict with Defendant Dyer prior to the incident on May 24, 2010. (ECF No. 58-6, Pl.'s Depo. at 89-90.)

　　　　The allegations against Defendant Dyer are similar to circumstances present in Clement v. Gomez, 298 F.3d 898 (9th Cir. 2002), where correctional officers administered pepper spray to quell a disturbance within a prison cell at Pelican Bay State Prison.  An officer administered a burst of pepper spray into the cell, and some of the vapors from the spray drifted to the inmates in the neighboring cells.  The neighboring bystander inmates displayed reactions to the spray and began coughing and gagging, however, a second burst of pepper spray was determined necessary and administered.  The district court denied summary judgment in favor of Defendants finding a dispute of fact as to whether the second application of pepper spray constituted excessive force.  The Ninth Circuit reversed the denial of summary judgment and found that even assuming the "final spray was dispensed after the sounds of coughing and gagging were heard from the neighboring cell, this allegation alone does not lead to the inference that the official used the pepper spray 'maliciously and sadistically for the very purpose of causing harm.'" Id. at 901.

In this instance, similar to Clement, officer Dyer observed Plaintiff moving and not yet handcuffed (which Plaintiff does not dispute) during the "cuff and cover," and Dyer reasonably believed pepper spray was necessary to restore and maintain order on the yard to prevent further escalation of the incident. The pepper spray had the desired effect on Plaintiff who resumed the prone position. There is no evidence that Defendant Dyer used any more pepper spray than was necessary, and again Plaintiff does not dispute that he was moving while on the ground in the prone out position. Although Plaintiff had previously been hit by the 40 mm launcher, there is no evidence that Dyer was aware of such fact and from his viewpoint some force was reasonably necessary, and there is simply no requirement under the circumstances that Dyer had to ascertain Plaintiff's reasons for not comply with the orders. Whitley, 475 U.S. at 320.[13] Accordingly, Defendant Dyer is entitled to summary judgment.

## IV.
## CONCLUSION AND RECOMMENDATION

Based on the foregoing, Defendants have come forward with evidence that establishes that they perceived a threat to inmates and staff, and Plaintiff has failed to rebut such evidence. Accordingly, it is HEREBY RECOMMENDED that Defendants' motion for summary judgment be GRANTED.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and

//
//
//
//
//
//

---

[13] Because the Court finds that Defendants are entitled to summary judgment on Plaintiff's excessive force claim, the Court need not reach the issue of qualified immunity.

1  Recommendation." The parties are advised that failure to file objections within the specified time may
2  result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014)
3  (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

5  IT IS SO ORDERED.

6  Dated:   **June 9, 2015**
7  UNITED STATES MAGISTRATE JUDGE